# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ALEXSAM, INC., § § *Plaintiff*, § v. § § INTERACTIVE COMMUNICATIONS § INTERNATIONAL, INC., et al., § § *Defendants*. § § | CASE NO. 2:03-CV-337-TJW |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Interactive Communications ("InComm's") motion to enforce the parties' Settlement Agreement (Dkt. No. 237) and emergency motion to stay the arbitration (Dkt. No. 238). For the following reasons, the Court DENIES InComm's emergency motion to stay arbitration and DENIES InComm's motion to enforce the Settlement Agreement.

### I. BACKGROUND

Plaintiff Alexsam, Inc. ("Alexsam") originally brought suit on September 26, 2003 against one defendant and subsequently added additional defendants, including defendant InComm, alleging infringement of United States Patent Nos. 6,000,608 ("the '608 patent") and 6,189,787 ("the '787 patent"). Alexsam initially asserted against InComm numerous claims of the '608 patent and numerous claims of the '787 patent. The Court issued a claim construction order on June 10, 2005 that narrowed Alexsam's claims. Alexsam's subsequent technical expert report and damages expert report only asserted one claim under the '608 patent against InComm. After the Court's claim construction order, the parties entered into a License Agreement and a separate Settlement Agreement on July 11, 2005. On July 25, 2005, the Court granted the parties' stipulation and order of dismissal and retained jurisdiction to enforce the terms of the Settlement

Agreement. Following the settlement, a dispute arose around November 2006 regarding InComm's royalty calculations under the terms of the License Agreement. On or about May 14, 2008, Alexsam, through its counsel from the underlying litigation, demanded arbitration under the License Agreement, arguing that InComm had breached the License Agreement by failing to pay royalties relating to the Licensed Products. The Honorable Karl Bayer was appointed as arbitrator. Alexsam's Original and Amended Complaints in the arbitration charge InComm with failing to make royalty payments that the License Agreement requires for certain transactions after July 11, 2005, the date the parties settled. In the arbitration and in response to Alexsam's claims, InComm contends that those transactions are not of the type for which the License Agreement requires that InComm pay a royalty because those claims were abandoned by Alexsam during the underlying case in this Court. In mid-2009, Alexsam retained new counsel, of which InComm argues has changed the scope of the arbitration proceeding well beyond what the parties agreed to when they entered into the Settlement Agreement and License Agreement in 2005.

**II.     ANALYSIS**

**A. Motion to Enforce the Settlement Agreement**

In Defendant InComm's motion to enforce the Settlement Agreement, InComm requests that this Court:

- Order that the Settlement Agreement controls any and all matters of patent law that were or could have been asserted by Alexsam against InComm under the '608 and '787 patents.

- Order that Alexsam is violating the Settlement Agreement by asserting against InComm patent infringement claims under the '608 and '787 patents in an arbitration proceeding.

- Order that Alexsam released all allegations of patent infringement against certain InComm activation systems (and that they are barred by the doctrine of res judicata).

- Enjoin Alexsam from re-litigation on whether any InComm system is "covered by a claim of the Licensed Patents as those claims have been construed by T. John Ward," whether in arbitration, litigation, or any other forum.

InComm argues that the Court should enforce the Settlement Agreement and bar Alexsam's current claims in arbitration because (1) they were or could have been brought in this litigation based upon past activity of InComm and (2) the doctrine of res judicata bars Alexsam from asserting its current claims. InComm argue that Alexsam's current claims are "based upon" the "past activity" of InComm – the accused InComm activation system works the same way as it did when Alexsam dropped its infringement claims and entered the Settlement Agreement. InComm argues that the "past activity" referred to in the Settlement Agreement necessarily refers to activity that is not new to InComm in that it was activity disputed and addressed in the underlying litigation and partially resolved through the Court's claim construction order. InComm argues that the release provision of the Settlement Agreement expressly includes future claims by releasing claims that were or could have been brought "based upon" past activity. Thus, if a claim is based on the same activity that was or could have been at issue in the litigation, InComm argues that it is released as a claim based upon InComm's past activity. InComm further argues that the Court should refuse to send issues to arbitration that did not arise under the arbitration agreement, i.e. all of Alexsam's newly raised claims of patent infringement. InComm argues that the License Agreement contains no specific agreement to arbitrate patent infringement as opposed to breaches of contract, and the phrase "covered by a claim" in the License Agreement is not explicit enough to show that the parties intended to arbitrate the applicability of claims abandoned by Alexsam as a result of the Court's claim construction order.

In response, Alexsam argues that in the Settlement Agreement InComm agreed to pay a

fixed amount in return for which Alexsam released InComm "from any and all claims… that were or could have been brought in the Lawsuit for infringement of the '608 and/or '787 patents based upon any past activity." Alexsam argues that the Settlement Agreement only released claims for past activity and did not release infringement claims based upon future activity, i.e., activity that would occur after the July 11, 2005 settlement. Alexsam admits that the Settlement Agreement provided that the Court retains jurisdiction "to enforce the terms, conditions and covenants of this Agreement." Alexsam argues that its interpretation is consistent with the concurrent License Agreement entered into by the parties that deals with future events. Specifically, the License Agreement requires InComm to pay a royalty for certain transactions that would occur after July 11, 2005 and grants a license for those transactions. Alexsam argues that it is customary for parties to settle patent litigation with agreements that provide a release for the past and a license for the future, just as Alexsam and InComm did in this case. Alexsam argues that InComm points to no language in the Settlement Agreement that suggests that the parties intended to release future activity, and such a conclusion strains credibility that a release only mentioning past activities would also cover future activities. Alexsam also argues that such an interpretation would effectively void the License Agreement, which is designed to cover InComm's future activities.

Alexsam argues that the License Agreement contains an arbitration clause requiring InComm and Alexsam to arbitrate "any dispute, disagreement or difference of any kind, which arises between them as to the interpretation, performance, default or breach" of the License Agreement. Alexsam argues that the law requires the arbitrator, not the Court, to decide the parties' liability dispute for breach of the License Agreement. Alexsam argues that while the Court may determine whether the parties intended the particular issue to be resolved by arbitration, the Court cannot rule on the potential merits of the underlying claim. Alexsam also argues that,

despite the fact that the Court retained jurisdiction to enforce the Settlement Agreement, the arbitrator is not prohibited from deciding whether the Settlement Agrement's release impacts InComm's liability under the License Agreement. Further, Alexsam argues that claim preclusion (res judicata) does not bar its claims because the previous claims against InComm were patent infringement claims, not breach of license claims as asserted now in the arbitration, and the arbitration involves only claims that arose after the litigation was settled.

The Court finds that the Settlement Agreement was a release for InComm's past activity as of July 11, 2005 and the License Agreement was a license for future royalties after July 11, 2005. Page 3 of the Settlement Agreement includes the following relevant language (emphasis added):

> <u>Release by Alexsam</u>. Alexsam releases InComm, its officers, directors, employees, agents, affiliates, and customers (but only to the extent such customers' activities relate to InComm's products) from any and all claims and/or counterclaims that were or could have been brought in the Lawsuit for infringement of the '608 patent and/or '787 patents *based upon any past activity* of InComm.

The dispute between the parties largely focuses on what "based upon any past activity" refers to in the release provision of the Settlement Agreement. Based upon the language of the Settlement Agreement, the Court does not agree with InComm's arguments that the release provision includes future claims by releasing claims that were or could have been brought "based upon" past activity. The Court finds that this language specifically released only infringement claims based upon past activity by InComm, i.e. not future activity that would occur after the July 11, 2005 settlement. The Court finds that this language is unambiguous. This interpretation is further reinforced by the fact that the parties entered into a separate License Agreement covering future activities after the July 11, 2005 settlement date. While the Settlement Agreement provides this Court with jurisdiction "to enforce the terms, conditions and covenants of this Agreement," the Court finds that there has been no breach of the Settlement Agreement by Alexsam and nothing for this Court

to enforce. The Court does note that after the Court's claim construction order in this litigation Alexsam only asserted one claim of the '602 patent in its expert report and technical report, but whether those actions were an abandonment of those infringement claims by Alexsam in the litigation does not override the express language of the Settlement Agreement entered into by sophisticated parties.

The Court also rejects InComm's argument that Alexsam cannot bring claims on products that it arguably released in the underlying litigation or Settlement Agreement based upon a breach of the License Agreement. As stated earlier, the Court finds that the Settlement Agreement was a release for InComm's past activity as of July 11, 2005 and did not release any future activities by InComm. While in some circumstances the Court has the authority to determine the scope of the arbitration and whether the parties intended to arbitrate certain issues, the Court finds that under the terms of the License Agreement the parties agreed that "any dispute, disagreement, or difference of any kind" related to the License Agreement must be determined in arbitration. Paragraph 12 of the Arbitration includes the following language:

> Arbitration. The parties shall promptly attempt to reach an amicable settlement of any dispute, disagreement or difference of any kind, which arises between them as to the interpretation, performance, default or breach of this Agreement. If any such dispute, disagreement or difference is not resolved by the parties within thirty (30) days after written notice thereof is given by one part to the other, either party may request in writing that such dispute, disagreement, or difference be submitted to arbitration for resolution. … The finding of the arbitrator shall be final and binding on all parties to this Agreement. Either party shall be entitled to record or file the final decision in the same manner as a final judgment of a court. The expenses of the arbitrator shall be borne (or reimbursed, as applicable) by the non-prevailing party.

The License Agreement defines the Licensed Products to include any "Non-Reloadable Card distributed by or through InComm that is activated by using an Open Network and a POS Device, and is, either alone or in combination with the acts or equipment of others, covered by a claim of

the Licensed Patents as those claims have been construed by T. John Ward." Thus, whether the claims of the '608 and '787 patents covers the asserted products in the arbitration and whether the asserted products are actually Licensed Products under the terms of the License Agreement is not for this Court to decide but falls under the scope of the arbitration agreement. The Court rejects InComm's argument that, because Alexsam's conduct in this underlying litigation may have been inconsistent with Alexsam's current assertions in arbitration, Alexsam is not entitled to arbitrate these disputed issues. In such instances where sophisticated parties expressly agreed to arbitrate "any dispute, disagreement or difference of any kind, which arises between them as to the interpretation, performance, default or breach of this Agreement," and when the dispute clearly "arises" from the License Agreement, the Court finds that it must submit the issue to arbitration. *See Agere Systems, Inc. v. Samsung Electronics Co.*, 560 F.3d 337, 339 (5th Cir. 2009); *see also AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50 (1986); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *Rhone-Poulenc Specialties Chimiques v. SCM Corp.*, 769 F.2d 1569, 1572 (Fed. Cir. 1985).

Thus, while the Court could enforce the terms of the Settlement Agreement if there had been a breach of the Settlement Agreement, the Court finds that Alexsam has not breached the express terms of the Settlement Agreement and that the parties have expressly contracted any "dispute, disagreement, or difference of any kind" related to the License Agreement to be determined by the arbitrator. Thus, the Court DENIES InComm's motion to enforce the Settlement Agreement and confirms that this dispute is to be decided by the arbitrator.

### B. Motion to Stay the Arbitration

In the motion to stay the arbitration, InComm seeks this Court to stay the arbitration pending the Court's decision on the outcome of the motion to enforce the Settlement Agreement. Alexsam argues that a stay is necessary because upcoming discovery deadlines in the arbitration will force InComm to provide confidential information and to expend substantial resources trying to meet the arbitration deadlines. InComm argues that its participation in such discovery prior to this Court's ruling on its Motion to Enforce will deny InComm the benefits of the Settlement Agreement and this Court's retained jurisdiction. InComm argues that the Court should not permit Alexsam to reap the benefit of an improper arbitration while the motion to enforce remains pending on the Court's docket. InComm argues that the Court can stay the arbitration through (i) its inherent authority to control its docket and protects the interests of its litigants and (ii) the traditional four-factored test frequently employed to stay a pending arbitration proceeding.

The Court finds that InComm's motion to stay should be DENIED. InComm's motion seeks this Court to stay the arbitration prior to the Court's ruling on its motion to enforce the Settlement Agreement. Because this Court is currently denying the InComm's motion to enforce and that motion is no longer pending, and because the Court finds that the parties have expressly contracted any "dispute, disagreement, or difference of any kind" related to the License Agreement to the arbitrator, the Court DENIES InComm's motion to stay arbitration.

### III. CONCLUSION

The Court finds that Alexsam has not breached the express terms of the Settlement Agreement and that the parties have expressly contracted any "dispute, disagreement, or difference of any kind" related to the License Agreement to the arbitrator. Thus, the Court DENIES InComm's motion to enforce the Settlement Agreement, and accordingly, DENIES InComm's

motion to stay arbitration.

       IT IS SO ORDERED.

SIGNED this 12th day of March, 2010.

                                                       _____
                                                       T. JOHN WARD
                                                       UNITED STATES DISTRICT JUDGE